# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **CLEON ABRAMS, SR.,** *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **CIVIL ACTION 08-0068-WS-B** |
| ) | |
| **CIBA SPECIALTY CHEMICALS** ) | |
| **CORPORATION,** *et al.*, ) | |
| ) | |
| Defendants. ) | |

# ORDER

This matter comes before the Court on plaintiffs' Motion to Exclude William Desvousges' Expert Testimony, Opinions and Reports (doc. 306). The Motion has been briefed and is ripe for disposition.[1]

Plaintiffs are owners of property in and around McIntosh, Alabama, who allege that their homes have been contaminated by DDT and its metabolites (collectively, "DDTr") emanating from a nearby chemical manufacturing facility owned and operated by defendants (collectively, "Ciba"). On that basis, plaintiffs have brought causes of action against Ciba sounding in trespass, negligence, and nuisance. Although they initially claimed damages in the form of diminution of their property's value, plaintiffs have since abandoned that theory of recovery, and are now seeking an award of compensatory damages for restoration costs, that is, the cost of reducing DDTr concentrations in their dwellings to a level of 10 parts per billion.

Defendants retained William H. Desvousges, Ph.D., "to provide expert testimony regarding the economically valid approach and the data requirements for estimating alleged diminution in property values associated [with] the presence of DDTr in dust in the McIntosh

---

[1] The purpose of this Motion is somewhat opaque, given that defendants have not listed Dr. Desvousges among either their "will call" or "may call" witnesses in the Joint Pretrial Document (doc. 321) that governs the trial. Indeed, plaintiffs (not defendants) are the only party to list Dr. Desvousges as a potential witness. (Doc. 321, at 34.)

area." (Doc. 306, Exh. B, at 1.) All of the opinions that Dr. Desvousges has rendered in this case relate to a theory of damages predicated on diminution in property value.[2]

As documented in the court file, however, plaintiffs subsequently disavowed any intent to recover for devaluation of property in this case. The Court commented on this development via Order entered on October 1, 2009, as follows:

> "Having made an unequivocal statement repudiating any intent to seek damages in this action for diminution of property values, upon which representation both Ciba and this Court have relied in framing the summary judgment discussion and adjudication, plaintiffs will be held to it. As such, *the issue of diminished property value is no longer part of this case*. Plaintiffs are precluded by principles of estoppel and waiver from arguing otherwise henceforth."

(Doc. 284, at 7 (emphasis added).) Plaintiffs stand by their renunciation of the diminution-in-value theory of damages today, as they state that "Plaintiffs are **not** seeking damages in the amount that their respective properties were devalued as a result of the DDT that presently contaminates their homes." (Doc. 306, at 1 (emphasis in original).)

Because plaintiffs have abandoned all pretense of seeking recovery for devaluation of property, they now contend that Dr. Desvousges' testimony and opinions should be excluded on relevancy grounds. "The party offering the expert testimony has the burden of demonstrating that the testimony is relevant to the task at hand and logically advances a material aspect of its case." *Boca Raton Community Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232 (11th Cir. 2009) (citations and internal quotation marks omitted). In response, defendants concur that "evidence relating to property values may not be relevant in light of Plaintiffs' recent revision of their damages." (Doc. 323, at 1.) Nonetheless, defendants ask that they not be barred from introducing Dr. Desvousges' opinions if plaintiffs testify about diminution in property values. But plaintiffs have unequivocally disavowed any claim for devaluation damages, and this Court has expressly ruled that plaintiffs will be held to that strategic decision. As such, the Court foresees no scenario under which plaintiffs could possibly inject the issue of diminution of

---

[2] The gravamen of Dr. Desvousges' opinions is that he could not make any diminution in value computations in this case because there is inadequate data to enable those calculations to be performed in a reliable way. As he put it, "frankly I don't think anyone could be able to come up with a reliable estimate." (Doc. 306, Exh. C, at 52.)

-2-

property value into this trial.  Simply put, that avenue has been sealed off, by virtue of plaintiffs' representations to the Court and the ensuing Orders.  Accordingly, defendants' fear that plaintiffs may somehow slip diminution in value back into the case, such that Dr. Desvousges' testimony would become relevant, is misplaced.

For all of the foregoing reasons, Plaintiffs' Motion to Exclude William Desvousges' Expert Testimony, Opinions and Reports (doc. 306) is **granted**.  As this action is presently postured, Dr. Desvousges' opinions are not relevant to any remaining issue for trial; therefore, his testimony and opinions are **excluded** pursuant to Rules 402 and 702 of the Federal Rules of Evidence.[3]

DONE and ORDERED this 2nd day of March, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] In their briefs on this Motion, the parties spar over the admissibility of purported testimony by plaintiffs that their property values are increasing because of the new steel plant in that area.  Defendants argue that such evidence "may be relevant to prevent a windfall to plaintiffs."  (Doc. 323, at 2.)  Plaintiffs insist that there is no "evidence that a plaintiffs' [*sic*] property has increased in value for whatever reason," and that such evidence would be irrelevant in any event. (Doc. 349, at 1-2.)  But neither side explains what this argument has to do with the present Motion, which is confined to the admissibility of Dr. Desvousges' opinions.  Certainly, there is no indication that Dr. Desvousges believes plaintiffs' property values have risen.  The Court declines to embark on this tangent by the parties.  There has been no motion to preclude defendants from asking plaintiffs whether their property values have increased of late because of economic development in the area, nor do defendants specifically express an intention to elicit such testimony at trial.  Thus, this may be nothing more than a phantom issue.  Even if it does come to fruition at trial, the Court is unable to resolve the "windfall" issue at this time based on the fragmentary briefing of same that the parties have bootstrapped to briefs on the unrelated *Daubert* motion.